LAWRENCE FOX AND C. L. BERKEY, EXECUTORS OF THE ESTATE OF EMILIE C. FOX, DECEASED, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 66240. Promulgated January 31, 1935.

*Seymour Wells, C. P. A., Walter G. Moyle, Esq.,* and *Stanley Suydam, Esq.,* for the petitioners.
*B. M. Coon, Esq.,* for the respondent.

OPINION.

LEECH: Respondent has determined a deficiency of $1,447.14 in income taxes against petitioners' decedent for the calendar year 1929. Petitioners ask redetermination of this deficiency and a finding of overpayment of such taxes.

The facts are found as formally included in the stipulation of record. In the settlement of the pending deficiency under the decision herein, effect will be given to the concession of error by respondent, and the adjustments appearing in the stipulation.

Briefly stated, the facts are that Joab Lawrence died testate in Salt Lake City, Utah, on September 28, 1888. By his last will and testament he devised and bequeathed to Sarah M. Lawrence, his wife, all his estate. On March 5, 1890, Sarah M. Lawrence, having theretofore married George E. McKibbin, died testate in Salt Lake County, Utah. In her last will and testament she provided as follows:

I direct my executors to set apart such sums of money as shall be necessary to produce the several sums respectively to be paid as provided during the

time of such payment, and to hold the same for these purposes. I direct them also to apply the net rent, interest and income of the rest, residue and remainder of my estate, both real and personal, to the use of my daughter, Emily C. Fox, during the term of her natural life. Upon her death, I give, devise and bequeath unto her children, share and share alike and to the issue of deceased children taking their parents share, their heirs and assigns forever, all the rest, residue and remainder of my estate including the principal sums so set apart for the purpose of producing the annuities above stated, subject however to the payment of such annuities and to the retention of the principal sums until the annuities cease respectively.

On May 4, 1892, the estate of Sarah M. Lawrence (McKibbin) was distributed. The remainder of her estate, after payment of the pecuniary legacies, was distributed to Moylan C. Fox, in trust for Emilie C. Fox during her life, and at her death, remainder over for her children, as stated.

Moylan C. Fox died in 1927, and on April 1, 1927, W. W. Trimmer was duly appointed successor trustee by order of the Probate Court of Salt Lake County, Utah, which order, *inter alia*, provided:

That he shall from time to time, upon her request, pay to * * * Emilie C. Fox individually as the life beneficiary of the trust property aforesaid, all of the net rents, interest, income, increase and profits of the trust property now on hand and hereafter accumulated or accruing, remaining after retaining sufficient thereof to cover the necessary costs and expenses of executing his trusts pro tempore.

Early in 1929 W. W. Trimmer died, and by court order of the same court dated August 27, 1929, and containing a similar provision to that quoted from the order of April 1, 1927, C. L. Berkey was duly appointed as the successor trustee.

On April 26, 1929, pursuant to the petition filed by W. W. Trimmer, trustee, the court ordered the trustee to sell a certain piece of real estate belonging to the trust. After ordering the trustee to pay out of the purchase price a certain commission for making the sale, the court ordered:

the balance of said purchase price, when received by said trustee in substitution for the trust property so sold and conveyed, to be added to the trust property and accounted for by said Trustee as part thereof * * *

and further ordered:

that said Trustee, in the administration of his trust, do invest and reinvest so much of said balance of purchase price as belongs to the corpus of the trust property in bonds similar to those heretofore authorized by order of this Court for investment of funds belonging to the trust estate.

Shortly after the court issued the order to sell the real estate referred to above, W. W. Trimmer, the trustee, died. After his death, on September 6, 1929, the report giving an account of his trust was rendered to the same probate court for the deceased trustee. Such report gave an account of the trust for the period April 1 to September 3, 1929, during which period the real estate in question was sold.

The net income of the trust included a net profit on the sale of the real estate mentioned, amounting to $46,059.34, as follows:

| | |
|---|---|
| Profit on sale | $47,578.34 |
| Expenses connected with sale | 1,519.00 |
| Net profit | $46,059.34 |

This net income of the trust, so computed, was credited during the taxable year in question to the account of Emilie C. Fox, petitioners' decedent, as beneficiary. This credit was shown on the report to the court last mentioned. This net income of the trust, so computed, and credited to the account of petitioners' decedent, was in fact paid by the trustee to petitioners' decedent in cash, partly in 1929 and partly in 1930.

On September 20, 1929, an order of the Probate Court of Salt Lake County, Utah, was made, settling the deceased trustee's account included in the report filed as mentioned on September 6, 1929, and that account and report were in that order approved. The March 1, 1913, value of the Second East Street property which was sold in 1929 was $54,475. Depreciation allowable on improvements on said property from March 1, 1913, to December 31, 1928, was $527.50 and the excess of the amount received over the value on March 1, 1913, less depreciation allowable was $9,533.50, computed as follows:

| | | |
|---|---|---|
| Total sale price | | $65,000.00 |
| Less: | | |
| Commission | $1,475.00 | |
| Abstract | 44.00 | |
| | | 1,519.00 |
| Net amount received | | 63,481.00 |
| Deduct: | | |
| March 1, 1913, value of property | 54,475.00 | |
| Less depreciation allowable | 527.50 | |
| | | 53,947.50 |
| Profit | | 9,533.50 |

This $9,533.50 was reported as capital gain in the income tax return of Emilie C. Fox, petitioners' decedent, for the year 1929. Petitioners now contest the propriety of respondent's action in including this amount in decedent's taxable income for that year. That contest presents the single issue for our attention.

The applicable statutory provision is the Revenue Act of 1928, section 162, which provides, *inter alia*:

The net income of the estate or trust shall be computed in the same manner and on the same basis as in the case of an individual, except that—

\*  \*  \*  \*  \*  \*  \*

(b) There shall be allowed as an additional deduction in computing the net income of the estate or trust the amount of the income of the estate or trust

for its taxable year which is to be distributed currently by the fiduciary to the beneficiaries, * * * but the amount so allowed as a deduction shall be included in computing the net income of the beneficiaries whether distributed to them or not.

Petitioners argue that this fund was not distributable to petitioners' decedent, as life beneficiary, because it was corpus of the trust estate and not income. They call our attention to the rule holding that mere conversion of a part of the corpus of an estate from real estate to personalty does not change the character of the personalty from corpus to income. They then cite two New York cases, *Stewart* v. *Phelps*, 71 N. Y. App. Div. 91; affd., 173 N. Y. 621; and *Matter of Roberts* (Surrogate Court), 40 Misc. (N.Y.) 512.

Respondent admits the possible soundness of this position as to the will creating the trust. But, he argues, all the interested parties, and the state court in construing this will in the orders appointing the several successive trustees and authorizing the sale of the real estate, treated the questioned fund as income and, therefore, distributable. Cf. *Molly Netcher Newbury*, 26 B. T. A. 101, and cases there cited. The disputed fund was not only credited to the beneficiary, petitioners' decedent, on the trustees' accounts, but was actually received and returned for income tax purposes by that decedent beneficiary. Aside from these conflicting positions, we think there is a conclusive reason why respondent should be sustained here. Assuming, with petitioners, that the resolution of the primary issue already stated depends upon whether or not the funds upon which the present deficiency is premised were legally " distributable " to petitioners during the taxable year, we think, for income tax purposes, they bore such designation. In *Freuler* v. *Helvering*, 291 U. S. 35, the Supreme Court held that a beneficiary of a trust was not taxable upon amounts distributed to that beneficiary where such amounts were improperly so distributed and their return to the trust was ordered by the state court of proper jurisdiction. In that case the Court said:

We think the order of the state court was the order governing the distribution within the meaning of the Act.

Moreover, the decision of that court, until reversed or overruled, establishes the law of California respecting distribution of the trust estate. It is none the less a declaration of the law of the State because not based on a statute, or earlier decisions. The rights of the beneficiaries are property rights and the court has adjudicated them. What the law as announced by that court adjudges distributable is, we think, to be so considered in applying section 219 of the Act of 1921.

It is true that section 219 of the Revenue Act of 1921 was there involved, but section 162 of the 1928 Act, here applicable, is similar, certainly for present purposes. See *Helvering* v. *Butterworth*, 290 U. S. 365; *Guitar Trust Estate*, 25 B. T. A. 1213; affirmed on this point, 72 Fed. (2d) 544.

This record presents the converse factual situation from that appearing in the *Freuler* case. The presently applicable statutory provision, above quoted, permits the trustee to deduct from its taxable income and taxes to the beneficiary, income which " is to be distributed currently * * * whether distributed to them or not." The Utah state court of proper jurisdiction specifically approved the present distribution to petitioners' decedent. That order, so far as this record discloses, stands undisturbed. Upon authority of *Freuler* v. *Helvering, supra*, that court order conclusively determined that the presently involved distribution to petitioners' decedent was so distributable during the pending taxable year, within the quoted and here controlling statutory provision. Accordingly, respondent is affirmed on this issue.

*Decision will be entered under Rule 50.*